

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-16-2002

# Walker v. Horn

Precedential or Non-Precedential:

Docket No. 01-1905

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Walker v. Horn" (2002). *2002 Decisions.* Paper 279.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/279

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

        Filed April 16, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-1905 and 01-1957

MICHAEL TYRONE WALKER

v.

MARTIN HORN, Commissioner of Pennsylvania
Department of Corrections; JEFFREY BEARD, Deputy
Commissioner of Treatment at Pennsylvania Department
of Corrections; KENNETH KYLER, Superintendent at
SCI-Camp Hill Prison; MARTIN LASKY, Medical Director of
SCI-Camp Hill Prison; WILLIAM W. YOUNG, Medical
Doctor of SCI-Camp Hill Prison; WILLIAM WARD, Unit
Manager of SCI-Camp Hill Prison; ARTHUR AUXER,
Associate Manager of SCI-Camp Hill Prison

        Arthur Auxer,
        Appellant at No. 01-1905

MICHAEL TYRONE WALKER

v.

MARTIN HORN, Commissioner of Pennsylvania
Department of Corrections; JEFFREY BEARD, Deputy
Commissioner of Treatment at Pennsylvania Department
of Corrections; KENNETH KYLER, Superintendent at
SCI-Camp Hill Prison; MARTIN LASKY, Medical Director of
SCI-Camp Hill Prison; WILLIAM W. YOUNG, Medical
Doctor of SCI-Camp Hill Prison; WILLIAM WARD, Unit
Manager of SCI-Camp Hill Prison; ARTHUR AUXER,
Associate Manager of SCI-Camp Hill Prison

        Martin Lasky,
        Appellant at No. 01-1957

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. No. 96-cv-00518)
        District Judges: The Honorable Yvette Kane
        The Honorable Edwin M. Kosik

Argued January 24, 2002

BEFORE: NYGAARD and STAPLETON, Circuit Judges ,
and SLEET,* District Judge.

(Filed April 16, 2002)

        Randall G. Gale, Esq. (Argued)
        Thomas, Thomas & Hafer
        305 North Front Street
        PO Box 999
        Harrisburg, PA 17108
         Counsel for Appellant
        at No. 01-1957

        Michael A. Farnan, Esq. (Argued)
        Department of Corrections
        55 Utley Drive
        Camp Hill, PA 17011
         Counsel for Appellant
        at No. 01-1905

        Thomas M. Place, Esq. (Argued)
        150 South College Street
        Carlisle, PA 17013
         Counsel for Appellee

_____

* Honorable Gregory M. Sleet, District Judge for the United States
District Court for the District of Delaware, sitting by designation.

OPINION OF THE COURT

NYGAARD, Circuit Judge.

These are two appeals from denials of summary judgment
on the basis of qualified immunity. Appellee, a prisoner,
filed an action pursuant to 42 U.S.C. S 1983 asserting that
his constitutional rights were violated when he was force
fed, allegedly after agreeing to end a fast. Two Defendants
claim they are entitled to qualified immunity from suit. The
District Court denied their motions for summary judgment,
and they have appealed. Because the District Court's order
is based upon the existence of an issue of fact, we lack
appellate jurisdiction and will dismiss both appeals.

I.

In interlocutory appeals from denials of summary
judgment on the basis of qualified immunity, we must
accept the District Court's set of facts as given. See
Johnson v. Jones, 515 U.S. 304, 319 (1995). Therefore, we
have taken the following facts nearly verbatim  from the
District Court's opinion and the Magistrate Judge's Report
and Recommendation:

Appellee, Michael Tyrone Walker, was a prisoner in the
Special Management Unit at the Pennsylvania State
Correctional Institution at Camp Hill. He was confined in
his cell twenty-three hours a day. He exercised in his cell
by doing calisthenics at least sixty minutes each day and
exercised outside of his cell each weekday for forty to fifty
minutes by jogging and doing calisthenics.

Walker is a practicing member of the Nation of Islam, a sect of the Islamic religion, which follows the teachings of Elijah Muhammad. During past years while incarcerated, Walker engaged in fasts for various periods of time as part of his sincerely-held religious beliefs. While fasting, he drinks liquids including juice, water, coffee, and iced tea, but eschews solid food. Members of the Nation of Islam fast during Ramadan and at other times during the year in accordance with the teachings of Elijah Muhammad.

3

On August 22, 1995, Walker began such a fast. During the period from August 26, 1995 to August 30, 1995, Walker was examined by Dr. William W. Young. Dr. Young weighed Walker, took his blood pressure, listened to his breathing, and examined his eyes. Dr. Young did not seek to extract Walkers's blood for testing, nor did he urge Walker to cease fasting or discontinue exercising. However, on one occasion Walker, upon request, provided the medical department with a urine sample.

Walker has frequently fasted during his incarceration and on numerous occasions has engaged in fasts of three to fifteen days long. This time, however, the Department of Corrections, SCI-Camp Hill, sought an ex parte injunction from the Court of Common Pleas of Cumberland County, Pennsylvania, which would authorize the medical staff at SCI-Camp Hill to force feed Walker. Walker told Dr. Young that he was on a religious fast. Nonetheless, the complaint alleged that Walker was simply on a "hunger strike." An affidavit by Appellant Dr. Martin Lasky was attached to the application for injunctive relief.

The only information considered by the Court of Common Pleas was Dr. Lasky's affidavit of August 30, 1995 in which he stated that, based upon his observation, Walker "appeared somewhat lethargic, slow walking and spoke with a slight slur." Dr. Lasky stated that these observations "could be the effects of starvation and dehydration" and that unless Walker received nutrition and hydration "as soon as possible," he would suffer serious harm and "possibly death." Walker was not given a medical examination by Dr. Lasky, but Dr. Lasky did speak to Walker through his cell door before giving the August 30, 1995 affidavit.

On August 31, 1995, the Court of Common Pleas entered an order authorizing the medical department to force feed Walker. The court also entered orders on August 31, 1995 scheduling a hearing for September 5, 1995 and appointing counsel to represent Walker at the hearing. At the September 5, 1995 hearing, the preliminary injunction was continued upon agreement of the parties.

On August 31, 1995, Dr. Lasky came to Walker's cell and

4

told him that the medical department had obtained a court order permitting them to force feed him. Walker informed Dr. Lasky that he was fasting for religious reasons. Dr. Lasky told Walker that he would be forced-fed. Shortly thereafter, Walker was taken from his cell to the infirmary. He was stripped and strapped to a hospital bed with ankle and wrist restraints. A chest strap was used to prevent him from moving on the bed. As Walker was being strapped to the hospital bed, he told Ward, Auxer,[1] Dr. Young, and Dr. Lasky, who were all standing near the bed, that he was willing to stop his fast to avoid being force fed. Auxer told Walker that his decision to eat solid food came too late to avoid being force fed. Then, nurses under Dr. Lasky's supervision inserted a plastic tube through Walker's nose and into his stomach.

Walker informed medical personnel that he did not eat meat or milk products as both foods caused his stomach to be upset. Notwithstanding that warning, and acknowledging that Walker's medical records verified that he was a vegetarian, Dr. Lasky told Walker that he would be force fed the foods that were being served to the general prison population. Walker was then force fed liquefied liver and mashed potatoes containing milk.

Sometime after the force feeding of the noon meal, Walker again told medical personnel including Dr. Lasky that he was willing to cease his fast and that certain foods caused his stomach to be upset. Dr. Lasky told Walker that the feeding tube would not be removed from his body and that he would be required to eat the evening meal with the feeding tube in place. When informed that the evening meal would include spaghetti with meat, Walker again told Dr. Lasky that eating meat caused his stomach to be upset. Once again, ignoring Walker's warning, Dr. Lasky told Walker that he would be required to eat the food being served to the general population. Under the threat of force feeding being resumed if he refused, Walker ate the meal. Understandably, the presence of the feeding tube caused Walker great discomfort each time he swallowed.

---

1. Auxer was the Associate Manager of the Special Management Unit at SCI-Camp Hill.

During the night, after being required to eat the meal with meat, Walker vomited. He was still restrained by wrist and chest restraints which significantly limited his movement. So, the vomiting caused him to gag and choke. The following morning, Walker asked Dr. Lasky to remove the feeding tube. Dr. Lasky refused and told Walker that the tube would remain in his body until at least the next day after breakfast. Walker was required to eat three meals on September 1, 1995, and breakfast and lunch on September 2, 1995, with the feeding tube in his body. Throughout this period, he continued to be strapped to the

bed by ankle and wrist restraints. He was released from the restraints only for short periods of time during the day.

Walker claims that Appellants' conduct violated his rights under the First, Eighth, and Fourteenth Amendments. Walker also claims that Appellants violated the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C.S 2000bb. The District Court dismissed the RFRA claim on December 31, 1997. Walker seeks declaratory and injunctive relief and compensatory damages from Appellants in their individual capacities.

Appellants filed numerous pre-trial motions, and a Magistrate Judge issued a Report and Recommendation. After considering the parties' objections to the Report and Recommendation, the District Court issued its Memorandum and Order. The only motions relevant to this appeal are the summary judgment motions of Auxer and Dr. Lasky who both argue that they are immune from suit under the doctrine of qualified immunity.

The District Court denied summary judgment to Auxer stating:

> [W]e believe that plaintiff 's statement in his affidavit and deposition that he told defendant Auxer that he would stop his fast in order to avoid being force fed is sufficient to create a genuine issue of material fact on the plaintiff 's Eighth Amendment claim.

Similarly, the District Court denied summary judgment to Lasky stating:

> There are also genuine issues of material fact surrounding the various conversations between the

> plaintiff and defendant Lasky and defendant Lasky's conduct in response thereto. Accordingly, we find that the instant record raises genuine issues of material fact surrounding defendant Lasky's actions with respect to plaintiff 's claims under the Eighth Amendment.

As illustrated above, in each case the District Court's decision turned upon the existence of a genuine issue of material fact.

II.

A.

As an initial matter, we must consider whether we have jurisdiction over these appeals. We have recently summarized the relevant law and its background in In re Montgomery County, 215 F.3d 367 (3d Cir. 2000), cert. denied, 531 U.S. 1126 (2001):

As a general rule, the federal appellate courts have no jurisdiction under 28 U.S.C. S 1291 to review interlocutory decisions such as a denial of summary judgment. Nevertheless, the collateral-order doctrine excepts a narrow range of interlocutory decisions from the general rule. See Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L. Ed.1528 (1949). To fall within the doctrine, an interlocutory decision must conclusively determine the disputed issue, the issue must be completely separate from the merits of the action, and the decision must be effectively unreviewable on appeal from a final judgment. See Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L. Ed.2d 351 (1978).

The Supreme Court has repeatedly applied the collateral-order doctrine to hold that orders denying absolute immunity are reviewable on interlocutory appeal. See, e.g., Nixon v. Fitzgerald , 457 U.S. 731, 102 S. Ct. 2690, 73 L. Ed. 2d 349 (1982) (finding appellate jurisdiction over denial of president's claim to absolute immunity); Helstoski v. Meanor, 442 U.S. 500, 99 S.

Ct. 2445, 61 L. Ed. 2d 30 (1979) (reviewing claim of immunity under Speech and Debate Clause); Abney v. United States, 431 U.S. 651, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977) (reviewing claim of immunity under Double Jeopardy Clause); see also Carver v. Foerster, 102 F.3d 96, 98-99 (3d Cir. 1996). In doing so, the Court has explained that absolute immunity creates not only protection from liability, but also a right not to stand trial. See Mitchell v. Forsyth, 472 U.S. 511, 525, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985). If required to await final judgment on the merits of the underlying action before seeking appellate review, the appellant would irretrievably lose the right not to stand trial in the first place. See id. Thus, interlocutory review of the Appellants' absolute immunity claims is necessary to preserve the protections such immunity affords.

In Mitchell, the Supreme Court extended the collateral-order doctrine to include denial of claims to qualified immunity. See id.; see also Brown v. United States, 851 F.2d 615, 619 (3d Cir. 1988). Nevertheless, denial of qualified immunity falls within the collateral-order doctrine only to the extent the denial turns on an issue of law. See Johnson v. Jones, 515 U.S. 304, 313, 115 S.Ct. 2151, 132 L. Ed.2d 238 (1995); see also Grant v. City of Pittsburgh, 98 F.3d 116, 119-20 (3d Cir. 1996) ("To the extent [that] they turn on an issue of law, decisions denying public officials qualified immunity are considered final under the collateral order doctrine.") (emphasis added). Generally, the relevant issue of law is whether the right the defendant is alleged to have violated was "clearly established" at the time the defendant acted or failed to act. See Behrens v. Pelletier, 516 U.S. 299, 313, 116 S.Ct. 834, 133 L.

Ed.2d 773 (1996). Where, however, denial turns on the
sufficiency of the evidence, it may not be appealed until
the district court enters final judgment in the case. See
Johnson, 515 U.S. at 313, 115 S.Ct. 2151.

In re Montgomery County, 215 F.3d at 373-74. Thus, we
only have jurisdiction over the District Court's order
denying qualified immunity to the extent that it involves an
issue of law.

Furthermore, as we discussed in In re Montgomery
County, the Supreme Court has given us clear guidance on
the limits of our jurisdiction in these sorts of appeals. In
Johnson v. Jones, 515 U.S. 304 (1995), the Court held that
when a District Court rests its denial of summary judgment
on the basis of qualified immunity on the existence of a
genuine issue of fact, then we have no jurisdiction. Id. at
307. In those instances where the District Court denied
summary judgment for a purely legal reason, we do have
jurisdiction, but we must adopt the facts assumed by the
District Court. Id. at 319.

B.

Application of the law to this case is quite simple. In both
the cases of Auxer and Dr. Lasky, the District Court denied
summary judgment because it found the existence of a
genuine issue of material fact. Walker's Eighth Amendment
claims turn on whether Auxer and Dr. Lasky knew that
Walker had agreed to eat to avoid being force fed. The
District Court found this fact in dispute. We cannot, in an
interlocutory appeal of this nature, consider whose version
of the facts is correct. This is not an ordinary appeal from
summary judgment where we would apply the same
standard as the District Court to determine whether
summary judgment was properly granted. Instead, this is
an interlocutory appeal from a denial of summary judgment
on the basis of qualified immunity. We must accept the
District Court's version of the facts, and we only have
jurisdiction to review questions of law. Since the District
Court's decision turned upon the existence of genuine issue
of material fact, we have no jurisdiction over this appeal
and must dismiss it.2

III.

In sum, and for the reasons given above, we will dismiss
the appeal for lack of jurisdiction.

_____

2. Appellants do not, and could not persuasively, argue that they are
entitled to qualified immunity based on the facts that the District Court
accepted for the purposes of deciding their motion for summary
judgment.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit