

Villanova University School of Law
Villanova University School of Law Digital Repository

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-30-2005

# Ismael v. Ali

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4894

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

## Recommended Citation

"Ismael v. Ali" (2005). *2005 Decisions.* Paper 941.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/941

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 03-4894
_____

TAREQ ISMAEL

v.

ABBAS ALI, DEPARTMENT OF MANAGEMENT EBERLY COLLEGE OF
BUSINESS; MANTON GIBBS, DEPARTMENT OF MANAGEMENT EBERLY
COLLEGE OF BUSINESS; CAROL DRYE, DEPARTMENT OF MANAGEMENT
EBERLY COLLEGE OF BUSINESS; ROBERT CAMP, EBERLY COLLEGE OF
BUSINESS; BHARAT DAS, DEPARTMENT OF MANAGEMENT EBERLY
COLLEGE OF BUSINESS; AMERICAN SOCIETY FOR COMPETITIVENESS,

Abbas Ali, Department of Management Eberly College
of Business; Manton Gibbs, Department of Management
Eberly College of Business; Carol Drye, Department
of Management Eberly College of Business; Robert
Camp, Eberly College of Business; Bharat Das,
Department of Management Eberly College of Business,

Appellants

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 99-cv-01932)
District Judge:  The Honorable Robert J. Cindrich

_____

ARGUED OCTOBER 28, 2004

Before: NYGAARD, AMBRO, and GARTH, <u>Circuit</u> <u>Judges</u>.

(Filed: June 30, 2005  )

Thomas G. Eddy, Esq.
Office of Attorney General of Pennsylvania
564 Forbes Avenue, Manor Complex
Pittsburgh, PA 15219

Bruce C. Fox, Esq. (Argued)
Obermayer, Rebmann, Maxwell & Hippel
500 Grant Street
Suite 5240, One Mellon Center
Pittsburgh, PA 15219
      <u>Counsel for Appellants</u>

Joel F. Bigatel, Esq. (Argued)
211 Haverford Avenue
Narberth, PA 19072
      <u>Counsel for Appellee</u>

_____

OPINION OF THE COURT
_____

NYGAARD, <u>Circuit</u> <u>Judge</u>.

Appellants, Abbas Ali and Manton Gibbs, sought an order granting them summary judgment on the basis of sovereign immunity.  The District Court suggested that Ali and Gibbs, both employees of Indiana University of Pennsylvania (IUP), failed to demonstrate that they were acting within the scope of their employment when they made several allegedly defamatory statements, and therefore were not entitled to immunity.  *See* 1 PA. CONS. STAT. ANN. § 2310.  Because were are unable to determine precisely the basis for

2

the District Court's opinion, we are concomitantly unable to ascertain whether we have appellate jurisdiction. Thus, we will vacate the District Court's opinion and remand the cause for the District Court to reconsider Ali and Gibbs' motion for summary judgment.

Ali and Gibbs, both professors at IUP, acted as coordinators for a business globalization conference. IUP was the primary sponsor of this conference. Although numerous organizations helped sponsor the conference, two are of primary importance: the American Society for Competitiveness (ASC) and the International Society for Competitiveness (ISC). Both of these organizations are associated with IUP. In addition to his full professorship at IUP, Ali served as an incorporator of ISC and ASC, Executive Director of ISC, and as Assistant Director of ASC. Gibbs, also a full professor at IUP, served as an incorporator of ISC, Treasurer of ISC, and Associate Executive Director of ASC. At the conference, Ali served as Program Chairman and Gibbs was the Program/Conference Coordinator.

Ali and Gibbs claim that following the conference, questions arose regarding the manner in which Appellee, Tareq Ismael, handled conference funds. Ali and Gibbs authored a series of letters addressed first to Ismael and then to his employers at the University of Calgary, alleging that Ismael mishandled conference funds. All of the letters were written on either ASC or ISC letterhead. The letters were signed by IUP/Commonwealth employees. The last four were signed by Gibbs, one as "Conference Coordinator," two as "Professor and Conference Coordinator," and one as "Conference

3

Coordinator, American Society for Competitiveness." Ismael claims that these letters were defamatory.

Ismael filed suit against Ali, Gibbs, three other individuals, ASC, ISC, and IUP. The District Court found that IUP was entitled to sovereign immunity and dismissed the claims against it. Ali and Gibbs claimed that they too were entitled to sovereign immunity pursuant to Pennsylvania Law, which provides that "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit." 1 PA. CONS. STAT. ANN. § 2310. The Court denied the motion for summary judgment. Ali and Gibbs now appeal.

The first question we must address, is whether we have jurisdiction to review the District Court's determination that Ali and Gibbs were not entitled to summary judgment. At the very least, we have jurisdiction to determine the question of jurisdiction. *United States v. Ruiz*, 536 U.S. 622, 628 (2002). Where we are faced with an interlocutory appeal from a denial of summary judgment, sought on the basis of sovereign immunity, it is of critical importance to determine why the District Court denied the motion. If there was a material dispute of fact, we lack jurisdiction to review its order. We are unable to make that determination on this record.

The District Court alluded to limited facts in writing its opinion denying summary judgment—that the letters were written on ASC letterhead and that Ali and Gibbs did not receive a salary from ASC or ISC. No other facts relating to Ali or Gibbs were addressed

4

by the District Court. The Court did not cite to the relevant Pennsylvania law.[1] Without a statement from the District Court explaining what facts or law its conclusion was based on, we cannot determine whether we have jurisdiction to review its order. We now exercise our supervisory powers to require the District Court on remand to clearly identify whether this motion for summary judgment, made on a claim of qualified immunity, has been denied because there was a dispute of material fact, or as a matter of law. *See Forbes v. Township of Lower Merion*, 313 F.3d 144, 149 (2002).

Hence, we will vacate and remand the cause to the District Court for it to revisit the issue of sovereign immunity and reconsider Appellant's motion for summary judgment.[2]

---

1. For example, it does not appear that the District Court opinion considered, nor did the Court cite to, the Restatement Second of Agency, the law followed in Pennsylvania. *Aliota v. Graham*, 984 F.2d 1350, 1358 (3d Cir. 1993). This is significant because the Restatement provides that conduct may fall within the scope of employment "although done in part to serve the purpose of the servant or of a third person." RESTATEMENT (SECOND) OF AGENCY § 236. The Comments elaborate that a person may serve two masters "both of whom are interested in the performance of the same act." *Id.*, cmt. a.; *see Brumfield v. Sanders*, 232 F.2d 376, 381 (3d Cir. 2000).

2. We decline to respond at length to our colleague's dissent. Because the District Court did not set forth findings of fact and conclusions of law sufficient for us to determine our jurisdiction, nor may we engage in appellate fact finding, *see Chalfant v. Wilmington Institute*, 574 F.2d 739, 747-753 (3d Cir. 1978), we have concluded the prudent option is a remand for the District Court to make the requisite findings.

AMBRO, <u>Circuit Judge</u>, dissenting_____

I respectfully dissent because I disagree with my colleagues' conclusion that we cannot determine whether we have jurisdiction and thus we should remand. Instead, I believe we have jurisdiction. Further, I would affirm the District Court's denial of defendants' summary judgment motion.

**Factual History**

The following facts are relevant to this appeal in addition to the facts described in the majority opinion. In November 1998, Ismael and Ali were involved in a conference at the Eastern Mediterranean University in Northern Cypress.[3] Ismael's conduct in connection with the conference spawned a series of letters that underlie this dispute.[4]

Ismael claims that Ali ordered Carol Drye, a secretary at the Eberly College of Business, to fax a letter dated November 30, 1998, that contained false statements about

---

3. Robert Camp—Dean of the Eberly College of Business at Indiana University of Pennsylvania ("IUP"), as well as an incorporator, board member, and officer of the American Society for Competitiveness ("ASC") and the International Society for Competitiveness ("ISC")—was a member of the conference organizing committee. Ismael also was a member of the organizing committee and, according to Ali and Gibbs, program treasurer.

4. Before the conference, Ismael received a number of conference registration checks. He deposited the checks into an account at the Royal Bank of Canada. At the conference, a dispute developed between Ismael and Ali concerning various aspects of its running, including invitations to a luncheon at the home of the President of Northern Cypress that excluded certain faculty members from IUP (Gibbs among them). Ismael and Ali had public arguments. One professor heard Ali shout that he would get even with Ismael.

Ismael's handling of conference funds. According to Drye, Ali prepared the letter and ordered her to sign it. Ismael claims that the letter was carbon copied to Camp and Ali and forwarded by Drye to officials at Eastern Mediterranean University, to numerous other conference attendees, and to Ismael's employer. The letter was on ASC[5] letterhead and stated that "it was agreed that no Conference funds are [sic] deposited in a personal or fake account. . . . [W]e have ethical and professional responsibilities to our participants . . . [and] we feel obligated to inform the conference participants about the cash flow." The letter contained no request for an accounting, but demanded the return of unspent conference funds to ASC.

Ismael claims that Gibbs then signed a letter secretly co-authored by Ali—dated January 20, 1999, and addressed to the President of the University of Calgary—that contained false information. The letter, also on ASC letterhead, accused Ismael of lying regarding the payment of hotel expenses in connection with the conference and stealing conference proceeds. It requests the President to assist ASC in solving the "fraud issue" and putting an end to the "unprofessional conduct." It also requests that Ismael be instructed to forward all conference proceeds to Gibbs, payable to ISC.[6] The letter did not request an accounting of the funds or additional information as to conference expenditures.

---

5.    ASC is an independent corporation. It was neither controlled by IUP nor required to report to or seek IUP approval for its formation or activities.

6.    ISC also is an independent corporation.

Ismael claims that this letter caused the University of Calgary to start an investigation and that Gibbs signed responsive letters, co-authored by Ali, dated March 18, June 3, and June 16, 1999, to the University of Calgary making additional false statements about Ismael to the effect that he had misappropriated conference funds for his personal account and that his conduct was a "criminal act."

## Discussion

### I. Jurisdiction.

  a.  *The denial of summary judgment in this case is an immediately appealable collateral order.*

Federal appellate courts generally do not entertain appeals from district court orders denying motions for summary judgment unless those orders end litigation. 28 U.S.C. § 1291; *Rivas v. City of Passaic*, 365 F.3d 181, 191 (3d. Cir 2004). However, appeals from certain "collateral" orders may be immediately appealable even though they do not terminate litigation. *Cohen v. Beneficial Ind. Loan Corp.*, 337 U.S. 541, 546 (1949). And though this case is a diversity action based on state law claims, in *Brown v. Grabowski*, 922 F.2d 1097 (3d Cir. 1990), we recognized that "the parties in a diversity action . . . are bound by federal procedural rules governing appeals, including the collateral order doctrine." *Id*. at 1106. Collateral orders subject to immediate appeal are those orders that (1) conclusively determine the disputed issue, (2) resolve an important issue entirely separate from the merits of the lawsuit, and (3) cannot be effectively

8

reviewed on appeal from a final judgment. *See Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978) (citing *Cohen*, 337 U.S. at 546).

In *Brown* we wrote that "the right to an interlocutory appeal from the denial of a claim of absolute or qualified immunity under state law can only exist where the state has extended an underlying substantive right to be free from the burdens of litigation arising from acts taken in the course of [official] duties." 922 F.2d at 1106-07 (quotation omitted). In effect, "[i]t is *immunity from suits*, rather than mere immunity from liability, that . . . make[s] [an order denying summary judgment on state statutory immunity grounds immediately] appealable." *In re City of Philadelphia Litigation*, 49 F.3d 945, 957 (3d Cir. 1995) (emphasis added). Also, after writing that orders denying summary judgment sought on immunity grounds based on Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA") were not immediately appealable orders (recognizing that the PSTCA provided for immunity from liability rather that immunity from suit), we reiterated that "when *immunity from suit* is involved, the opposite result should be reached." 49 F.3d at 958 (emphasis added). *See also Giuffre v. Bissell*, 31 F.3d 1241, 1248 (3d Cir. 1994) ("The denial of a claim of qualified immunity premised upon state law . . . is appealable only if the state has conferred an underlying substantive immunity from suits . . . .") (emphasis omitted).

Presumably denial of summary judgment sought due to immunity from suit—as opposed to immunity from liability—is potentially an immediately appealable collateral

9

order because prongs one and three of the *Cohen* test are satisfied when immunity from suit is at issue, but not when immunity from liability is at issue. *Cf. Mitchell v. Forsyth*, 472 U.S. 511, 526-27 (1985) (holding that federal qualified immunity is immunity from suit rather than immunity from liability, and thus denial of summary judgment on federal qualified immunity grounds is immediately appealable because all three prongs of *Cohen* are satisfied).

Prong one of the *Cohen* test requires that the decision to be appealed conclusively determines the disputed issue. When summary judgment based on immunity from suit is denied, suit continues and the attempt to forestall it in its early stages is lost. *See Mitchell*, 472 U.S. at 527 ("the court's denial of summary judgment finally and conclusively determines the defendant's claim of right not to *stand trial*") (emphasis in text). Prong three requires that the decision to be appealed cannot be effectively reviewed on appeal from a final judgment. As we wrote in *Brown*,

> [a] decision denying summary judgment to an official asserting immunity from both litigation and liability [that is, immunity from suit] . . . involves a right that cannot be effectively vindicated after the trial has occurred. This is because the essence of such immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action.

922 F.2d at 1106 (citations and quotations omitted). Thus, because denial of summary judgment based on immunity from suit satisfies prongs one and three of the *Cohen* test, a defendant may immediately appeal such an order if prong two is satisfied (determining

whether the order resolves an important issue entirely separate from the merits of the lawsuit).

In this context, the issues devolve to two: (1) are Ali and Gibbs claiming immunity from suit or liability; and (2) is the immunity issue separable from the merits of the lawsuit. The statutory section under which Ali and Gibbs claim immunity—1 Pa. Cons. Stat. § 2310—reads in part: "[T]he Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain *immune from suit*." *Id*. (emphasis added). This plainly makes Pennsylvania employees acting in the scope of their official duties immune from suit and thus prongs one and three of the *Cohen* test are satisfied.

Whether immunity is separable from the merits of the lawsuit is a tougher issue. *Gwiszcz v. Philadelphia*, 550 A.2d 880 (Pa. Commw. Ct. 1988), implies that the answer under Pennsylvania procedural law is no. Besides the fact that we apply federal procedural law in this federal case, is a defamation suit like ours different in any event?

In *Gwiszcz*, the Commonwealth Court of Pennsylvania held that the denial of a summary judgment motion by the Pennsylvania Department of Transportation ("DOT"), based on Pennsylvania's sovereign immunity under § 2310, was not an appealable collateral order in an action for failing to maintain a roadway. 550 A.2d at 882. The DOT claimed in its motion for summary judgment that Gwiszcz failed to state a claim within one of the exceptions to sovereign immunity enumerated in 42 Pa. Cons. Stat.

11

§ 8522(1)-(9).  (Exception 4 deals with negligently maintained highways and exception 5 deals with negligently maintained potholes.)  In declining jurisdiction, the Court reasoned that the exceptions to immunity (negligently failing to maintain highways and potholes)  tie inextricably with the merits (failing to maintain a roadway).  Within the *Cohen* rubric, prong two was not satisfied under Pennsylvania procedural law relating to appeals.[7]

In our case (applying federal procedural law), is defamation different, *i.e.*, does immunity from a defamation suit (if Ali and Gibbs were acting as IUP—and therefore Commonwealth—employees) merge with whether defamation actually occurred?  To ask the question is to give the answer: no.  Whether Ali and Gibbs were acting within the scope of their employment hardly depends on the merits of the lawsuit.  Even the elements of each inquiry are poles apart.  Conduct within scope of employment (1) is what the employee is employed to perform, (2) occurs within authorized time and space limits, and (3) is done to serve the employer.  *Costa v. Roxborough Memorial Hospital*, 708 A.2d 490, 493 (Pa. Super. Ct. 1998).  Among the elements of defamation in Pennsylvania are: (1) a defamatory communication; (2) publication by the defendant; (3) its application to the plaintiff; (4) understanding by the recipient of its defamatory

---

7.      Another Pennsylvania case to hold that jurisdiction was lacking in an appeal of denial of a summary judgment under § 2310 was *Hammond v. Thompson*, 551 A.2d 667 (Pa. Cmwth 1988).  However, it does not contain significant discussion other than to quote *Gwiszcz*.  551 A.2d at 668.

meaning; (5) the plaintiff's understanding that it is intended to apply to him/her; and (6) special harm to the plaintiff. 42 Pa. Cons. Stat. § 8343(a). In this context, it is safe to say prong two of the *Cohen* test is satisfied.

>    b.    *The majority's argument that we cannot determine whether we have jurisdiction is incorrect.*

The majority asserts, without citation, that

> [w]here we are faced with an interlocutory appeal from a denial of summary judgment, sought on the basis of sovereign immunity, it is of critical importance to determine why the District Court denied the motion. If there was a material dispute of fact, we lack jurisdiction to review its order.

However, as the Supreme Court and one of my colleagues in the majority have previously recognized, there is no such rule. *See Behrens v. Pelletier*, 516 U.S. 299, 312-13 (1996) ("Denial of summary judgment often includes a determination that there are controverted issues of material fact . . . and *Johnson* [*v. Jones*, 515 U.S. 304 (1995),] surely did not mean that every such denial of summary judgment is nonappealable."); *Giuffre*, 31 F.3d at 1247 (Garth, J.) ("[T]he immediate appealability of orders denying immunity is not automatically defeated merely because some issues of material fact remain."). Indeed, the majority is incorrect even to distinguish between denials of summary judgment that determine that there is a genuine issue of material fact and denials of summary judgment that do not, as

> all denials of summary judgment, by definition, involve a determination that the evidence is disputed sufficiently to raise a genuine issue of material fact for trial. . . . Obviously, if a determination by a district court that genuine issues of material fact warrant trial were sufficient to prevent us

13

from exercising jurisdiction from an order rejecting a qualified immunity defense, we would never have jurisdiction over such appeals—a result plainly at odds with *Mitchell* [*v. Forsyth*, 472 U.S. 511 (1985),] and its progeny.

*Winfield v. Bass*, 106 F.3d 525, 529 (4th Cir. 1997) (citing *Behrens*, 516 U.S. at 312-13; Fed. R. Civ. P. 56).

Apparently, the majority's conclusion that it cannot determine whether it has jurisdiction is based on *Johnson v. Jones*, 515 U.S. 304 (1995), *Walker v. Horn*, 286 F.3d 705 (3d Cir. 2002), and *Ziccardi v. City of Philadelphia*, 288 F.3d 57 (3d Cir. 2002). However, *Johnson*, *Walker*, and *Ziccardi* merely held that, in a federal qualified immunity case, there is no interlocutory appellate jurisdiction to hear a claim that a district court erroneously found that a reasonable jury could find certain facts. *See Behrens*, 516 U.S. at 313 ("*Johnson* held, simply, that determinations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case."); *Walker*, 286 F.3d at 710; *Ziccardi*, 288 F.3d at 59 ("To the extent that the appeal disputes the district court's identification of the facts that are subject to genuine dispute, we dismiss this appeal for lack of appellate jurisdiction.").

The problem is this: Ali and Gibbs *never* made a claim, like the claims prohibited in *Johnson*, *Walker*, and *Ziccardi*, that the District Court erroneously found that a reasonable jury could find certain facts. Rather, they claimed that the District Court erroneously concluded that the facts in the record in the light most favorable to Ismael

14

did not satisfy the *legal* standard of sovereign immunity because it misunderstood the law of sovereign immunity.  In their "summary of the argument" section, Ali and Gibbs argued that

> the undisputable facts dictate that Appellants were acting within the scope of their employment with IUP and summary judgment should have been granted by the District Court upon a proper application of Pennsylvania law, *which it failed to apply*.  The District Court's reliance on the ASC letterhead used was misplaced and wrong *as a matter of law*, because it is the manifestation of authority from the principal, IUP, which *as a matter of agency law* adopted by the Pennsylvania Courts, is controlling on the issue.

Appellant Br. at 15 (first emphasis in original; latter two emphases added).

In addition, *Johnson*, *Walker,* and *Ziccardi* address appealability of issues underlying the *merits* of a claim, while our case addresses appealability of issues underlying whether *immunity* from trial on the merits attaches.  In *Brown v. Armenti*, 247 F.3d 69 (3d Cir. 2001), our Court explained that "[w]e had held in *Giuffre* . . . that a claim that 'I didn't do it' is different than a claim to the right of qualified immunity and that a denial of summary judgment based on the former is not appealable."  *Id.* at 77 n.4. The cases apparently relied on by the majority address appealability of issues underlying the merits of a claim, *i.e.*, "I didn't do it" claims.  Thus, there was no jurisdiction in those cases.  However, the claim in this case is for qualified immunity, which one of my colleagues in the majority described in *Giuffre* as different from unappealable claims.

Furthermore, appeals of issues underlying the merits of claims fail all three prongs of the *Cohen* test.  *See Behrens*, 516 U.S. at 313.  In contrast to *Johnson*, *Walker*, and

15

*Ziccardi*, however, the issue in this case satisfies all three prongs of the *Cohen* test.

Thus, while *Johnson*, *Walker*, and *Ziccardi* prohibit interlocutory appeals of (1)

evidentiary sufficiency in (2) federal immunity cases of (3) issues underlying the merits

of a claim that (4) fail all three prongs of the *Cohen* test for interlocutory appealability,

these cases do not prohibit interlocutory appeals of (1) misunderstandings of the legal

standard of sovereign immunity in (2) Pennsylvania § 2310 cases of (3) issues underlying

whether immunity attaches that (4) satisfy all three prongs of the *Cohen* test for

interlocutory appealability.

As I conclude we have jurisdiction, I turn to whether the District Court could

determine as a matter of law that Ali and Gibbs acted within their IUP employment.

## II. Whether Ali and Gibbs' actions were outside the scope of their IUP employment.

In *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware* Co., 998 F.2d 1224 (3d

Cir. 1999), we wrote the usual refrain regarding summary judgment:

> We review the district court's summary judgment determination *de novo*,
> applying the same standard as the district court. . . . [S]ummary judgment
> should be granted if, after drawing all reasonable inferences from the
> underlying facts in the light most favorable to the non-moving party, the
> court concludes that there is no genuine issue of material fact to be
> resolved at trial and the moving party is entitled to judgment as a matter of
> law.

*Id*. at 1230; *see also* Fed. R. Civ. P. 56(c). When Ali and Gibbs, employees of a

Commonwealth educational institution, disseminated the letters about Ismael's conduct,

16

did they conclusively do so as employees? If so, the denial of summary judgment should be reversed; if not, it should be affirmed.

As expected, Pennsylvania substantive law governs this diversity case. *Erie R.R. Co. v. Tomkins*, 304 U.S. 64, 72-73 (1938); *Aliota v. Graham*, 984 F.2d 1350, 1358 (3d Cir. 1993). To quote again the Pennsylvania statute at issue in this case—§ 2310—it reads in part: "[T]he Commonwealth, and its officials and employees *acting within the scope of their duties*, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit." *Id*. (emphasis added). The Pennsylvania Superior Court has adopted the general standard of the Restatement (Second) of Agency § 228 for determining whether an employee's conduct is within the scope of employment.[8] "In the absence of any contrary decisions or pronouncements by the Supreme Court of Pennsylvania, we predict that that court would follow this holding." *Aliota*, 984 F.2d at 1358. Thus (to repeat what I have written already), conduct is within the scope of employment if (1) it is of a kind that the employee is employed to perform, (2) it occurs substantially within the authorized time and space limits, and (3) at least part of its purpose is to serve the employer. Restatement (Second) of Agnecy § 228.[9] The

---

8.      *Costa v. Roxborough Mem'l Hosp.*, 708 A.2d 490, 493 (Pa. Super. Ct. 1998); *Butler v. Flo-Run Vending Co.*, 557 A.2d 730, 736 (Pa. Super. Ct. 1989); *Shuman Estate v. Weber*, 419 A.2d 169, 173 (Pa. Super. Ct. 1980); *Fitzgerald v. McCutcheon*, 410 A.2d 1270, 1272 (Pa. Super Ct. 1979); *Winward v. Rhodewald*, 198 A.2d 623, 624 (Pa. Super Ct. 1964).

9.      The District Court did not apply Pennsylvania law on scope of employment. In
(continued...)

17

Restatement (Second) of Agency § 228 also provides that "[c]onduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." Ali and Gibbs have not shown as a matter of law that their actions were within the scope of their IUP employment because they have not shown as a matter of law that they have satisfied prongs one and three of the scope of employment test.

> a. *Viewing the facts in the light most favorable to Ismael, Ali and Gibbs have not shown as a matter of law that the dissemination of the letters was conduct of a kind that they were employed to perform (Prong One).*

Ali and Gibbs claim that they disseminated the letters to ascertain what happened to the conference funds and to obtain an accounting of those funds on behalf of IUP. Camp arguably gave testimony in his deposition that before November 30, 1998, he

---

9. (...continued)
denying Ali and Gibbs' motion for summary judgment, the District Court wrote:

> [T]he record demonstrates that the allegedly defamatory letters were sent by the individual defendants in their capacities as representatives of ASC. The letters were on ASC letterhead. The fact that the individual defendants did not receive a salary from ASC or ISC is irrelevant. As plaintiff points out, many people serve as volunteers in community organizations yet are not insulated from defamation claims. At a minimum, the individual defendants have failed to demonstrate as a matter of law that they are entitled to sovereign immunity.

18

authorized[10] Ali and Gibbs to pursue getting an accounting from Ismael through correspondence.

> Q: (Ismael's Attorney): Did anyone speak with you about the contents of the [November 30, 1998] letter, assuming it was sent out on November 30th, before that time?
> A: (Camp) . . . Ali and Gibbs talked to me about the letter–about the . . . nature of the letter . . . .
> Q: Do you recall what your discussions were concerning the letter?
> A: [T]here had not been any accounting for what transpired financially in conjunction with the conference, and *they said they were going to make an effort to get an accounting from Professor Ismael.*
> Q: Did they say how they were going to do that?
> A: Well, *I assumed it would be correspondence of some kind. I certainly would have been agreeable that they pursue the matter . . . .*
> Q: . . . [D]id you authorize [the November 30] letter?
> A: *Indirectly*, I'm sure I did.
> Q: What do you mean indirectly?
> A: I did not read the letter and say yes, do this, but *the contents I would have authorized in general*." (Emphasis added.)[11]

---

10.     To repeat, Camp is the Dean of the Eberly School of Business at IUP, Ali is a Professor at the Eberly School of Business, and Gibbs is a Professor at IUP. Thus, Camp presumably has authority to authorize the conduct of Ali and Gibbs on behalf of IUP.

11.     Ali and Gibbs cite a different part of Camp's deposition testimony to argue that they were authorized to write the kind of letters at issue:

> The question would be, is it within the scope of their responsibilities, and virtually all activities of an academic scholarly nature are within the scope because they reflect back on the University, so, I mean, almost on a weekly basis there's correspondence going out that I don't authorize but it deals with some activity that a faculty member is involved in conjunction with an outside organization or a particular event or whatever. . . . Again, it could involve dialogue like this where I wouldn't have necessarily seen it but it [does not] mean it wasn't within their responsibilities.

(continued...)

But contrast those general "I would have been agreeable," type of "indirect[]" authorization statements with the following. Camp wrote an e-mail on December 3, 1998, stating that "I did not write the [Novmber 30, 1998] letter *nor did I authorize it*." (Emphasis added.) Furthermore, Camp was arguably an interested witness when he implied in his deposition that he may have authorized the November 30, 1998, letter, as he was still a defendant at the time of the deposition,[12] and the testimony concerned the potential liability of two of his professors. Camp's denial of authorization of the November 30, 1998 letter in his December 3, 1998 e-mail, combined with the fact that Camp was arguably an interested witness when he implied in his deposition that he may

_____

11.     (...continued)
But Camp's response was to a hypothetical question. After establishing that the January 20, 1999 letter was on ASC letterhead, Ismael's attorney asked whether, *if* such a letter had been on IUP letterhead, it would have been authorized:

> (Ismael's attorney) Q: In a matter such as this, *if a letter was to go out from IUP*, say an identical letter . . .
> (Camp) A: . . . It wouldn't be unusual for a faculty member operating within his or her responsibilities to send out a letter like this *on IUP letterhead*. (Emphasis added.)

In the passage cited by Ali and Gibbs, Camp is merely expanding his answer to Ismael's attorney's hypothetical. Thus, while the passage might show a letter like that of January 20, 1999 written on IUP letterhead was conduct of the kind Ali and Gibbs were hired to perform, it hardly shows, as a matter of law, that every letter at issue in this case sent *not* on IUP letterhead, but rather on ASC letterhead, was conduct within Ali and Gibbs' duties at IUP.

12.     Camp was deposed on December 19, 2002. He was dismissed as a defendant eleven months later.

20

have authorized the November 30, 1998 letter, means that Ali and Gibbs failed to show that there is no issue as to whether Camp authorized Ali and Gibbs to pursue getting an accounting from Ismael through correspondence.

Furthermore, upon receiving the January 20, 1999 letter to the University of Calgary, signed by Gibbs and written on ASC letterhead, Camp e-mailed Ismael stating that "Dr. Ali believes that he, personally, and the American Society for Competitiveness have been taken advantage of." There is no reference in the e-mail to IUP having authorized Ali or Gibbs to write the letter. In fact, there is no reference to any IUP interest or authority in the matter generally. Camp's deposition testimony also revealed that he had not seen the letter before he received a copy of it in the mail, and that at that time he was not contemplating communicating with the University of Calgary on behalf of IUP.

In this context, I have no doubt Ali and Gibbs have not shown as a matter of law that the dissemination of the letters was conduct of the kind that IUP employed them to perform.

      b.      *Viewing the facts in the light most favorable to Ismael, Ali and Gobbs have also not shown as a matter of law that enough of the purpose of the dissemination of the letters was to serve IUP (Prong Three).*

"Conduct of a servant is not within the scope of employment if it is . . . too little actuated by a purpose to serve the master." Restatement (Second) of Agency § 228. Thus, Ali and Gibbs must show as matter of law that *enough* of the purpose of the

21

dissemination of the letters was to serve IUP. Considering the facts in the light most favorable to Ismael—such as Ali's vow to get even with Ismael, the use of the ASC letterhead for all the letters Ismael alleges defamed him, that Ali and Gibbs requested that the money be returned to ASC and ISC, and that IUP is not referenced as an interested party in any of the letters[13]—Ali and Gibbs have not shown as a matter of law that enough of the purpose of the dissemination of the letters was to serve IUP. Instead, by far their primary purpose may have been to get personal revenge or serve ASC.

## Conclusion

Unlike my colleagues, I believe we have jurisdiction to decide this case. As Ali and Gibbs have not shown as a matter of law that the dissemination of the letters was conduct that IUP employed Ali and Gibbs to perform and that enough of the purpose of the dissemination of the letters was to serve IUP, they have not shown as a matter of law that their actions were within the scope of their IUP employment. Thus, I would affirm the District Court's denial of Ali and Gibbs' summary judgment motion. As a result, I respectfully dissent.

_____

13. The only time IUP was arguably referenced as an interested party was in the November 30, 1998, letter, which makes the following general statement: "We have ethical and professional responsibilities to our participants and to EMU and other primary sponsors (IUP & ISC) in this regard."